UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

**ELITE WOODWORKING LLC,**

Debtor.

Case No. 26-51355-prh
Chapter 11
Hon. Paul R. Hage

## DECLARATION OF DANIEL CONNELL IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS

I, Daniel Connell, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, declare the following to the best of my knowledge, information and belief:

1. I am the founder and managing Member of Elite Woodworking LLC, d/b/a Detroit Woodworking ("Debtor"). I hold ninety-nine (99%) percent of the membership interests in the Debtor and my son, Chase Connell, holds the remaining one (1%) percent membership interest.

2. On behalf of the Debtor, I signed a voluntary petition under chapter 11 of the United States Bankruptcy Code and authorized the filing of the petition on October 15, 2026 (the "Petition Date") with this Court.

3. I submit this Declaration on behalf of the Debtor to assist the Court and interested parties in understanding the background of the Debtor and its operations,

as well as the circumstances that resulted in the Chapter 11 filing. I further submit this Declaration in support of the first day motions filed at or shortly after commencement of this Chapter 11 case (the "First Day Motions"). If called to testify, I could and would testify competently to the facts set forth herein.

4. Except as otherwise indicated, I am generally familiar with each of the matters set forth below based on (a) my personal knowledge, (b) my review of the Debtor's relevant business records, (c) information supplied to me by the others employed by Debtor or (d) my opinion based upon my knowledge of the Debtor's operations and financial condition.

5. Nothing herein is intended to be or should be construed as an admission of the validity of claims, security interests, liens, contractual defaults or any other rights that may be asserted against the Debtor. The statements made herein regarding debts, obligations and claims represent a summary of those assertions made by creditors or other interested parties, and do not necessarily constitute a belief on the part of the Debtor that these assertions are true and/or accurate.

**Overview and Background of Debtor**

6. The Debtor is a Michigan limited liability company formed in 2011. The Debtor is a full-service millwork and cabinetry company. The Debtor performs various services, including design support, engineering, prototyping, manufacturing,

finishing and installation. The Debtor serves residential and commercial/corporate clients.

7. The Debtor operates out of a production facility in Roseville, Michigan and its production capabilities include CNC machining, laser technology and professional finishing systems.

8. The Debtor serves customers throughout southeast Michigan, the surrounding region and the United States, supporting large retailers, general contractors and residential homeowners with their woodworking furnishing needs. The Debtor has also provided services to compliment other companies that I own providing services in the construction/home improvement industry, including Connell Building Company.

9. As of the Petition Date, the Debtor employed 21 individuals in its operations.

**Events Leading to Chapter 11 Filing**

10. Since 2002, I have managed and operated The Connell Company, LLC d/b/a Connell Building Company ("Connell Building"), a general contractor and construction company serving Grosse Pointe and surrounding areas. Subsequently, I formed or acquired various entities relating to the construction industry: Village Painting and Finishing, LLC, D&D Heating and Cooling, LLC, Oasis Heating and

Cooling, LLC and Pointe Kitchen & Bath LLC (together with Connell Building, the "Connell Related Companies").

11. The construction and home improvement industry in Michigan has faced significant economic challenges over the past few years. Inflation and rising costs have helped to lower consumer spending and dampen consumer confidence, which has hurt revenues and profitability throughout the industry. These economic challenges have significantly harmed the financial condition of the Connell Related Companies, which have closed, or are in the process of winding down their operations.

12. The financial issues of the Connell Related Companies have negatively impacted the Debtor, which executed guarantees of certain debt of the Connell Related Companies.

13. In recent weeks, creditors of the Connell Related Companies have declared defaults in their loans and began exercising collection remedies and filing lawsuits against the Connell Related Companies and the Debtor.

14. Accordingly, the Debtor determined that a chapter 11 filing was necessary to preserve the going concern operations and maximize value to creditors through the anticipated filing of a plan of reorganization.

## Overview of Debtor's Assets

15. As of the bankruptcy filing date, Debtor held approximately $99,897.00 in cash and approximately $73,814.10 in receivables.

16. The Debtor's assets include the following: (a) machinery and equipment, recently appraised at $134,850.00; (b) raw materials and work in progress valued at $71,581.14; (c) office furniture and office equipment valued at $18,000.00; and (d) a vehicle valued at $15,000.00. The aggregate value of these assets is $239,431.14.

17. The Debtor owns no real property and leases the space for its operations in Roseville, Michigan.

## Debtor's Secured Claims

18. The United States of America, Small Business Administration ("SBA") asserts a first-in-priority security interest against Debtor's assets arising from an Economic Injury Disaster Loan ("EIDL") loan issued on August 28, 2020 and amended on September 13, 2021 in the principal amount of $500,000. The Debtor executed various loan documents in connection with procuring these loans (collectively, the "SBA Loan Documents").

19. As of the Petition Date, the SBA asserts a claim of $485,414.12 against the Debtor ("SBA Claim").

20. To secure the SBA Claim, the Debtor executed a Security Agreement in favor of the SBA thereby granting a security interest in substantially all of Debtor's assets.

21. The SBA Indebtedness is secured by a first-in-priority security interest against substantially all of Debtor's assets.

22. In addition, the following creditors assert interests in the Debtor's assets:

A. WebBank: On or about July 16, 2025, the Debtor and WebBank entered into a Business Loan and Security Agreement, relating to a $150,000 loan made to the Debtor secured by all assets of the Debtor.

B. WebBank: On January 15, 2026, the Debtor and WebBank entered into a PayPal Business Loan Agreement, which was later amended on August 27, 2025, relating to a $150,000 loan made to Debtor secured by all assets of the Debtor.

C. WebBank: On April 13, 2026, the Debtor and WebBank entered into a PayPal Business Loan Agreement relating to a $54,000 loan made to Debtor secured by all assets of the Debtor.

D. Fox: On July 13, 2026, Fox Funding Group, LLC and Debtor entered into a Future Receivables Sale and Purchase Agreement reflecting a total purchased amount of $67,000 for a purchase price of $50,000.

E. Elevation: On July 1, 2026, Elevation Capital Group, LLC and Debtor entered into an Agreement for Purchase and Sale of Future Receipts reflecting a total purchased amount of $125,000 and a purchased price of $100,000.

23. Upon information and belief, no other lenders or creditors, allege security interests against Debtor's assets.

**First Day Motion - Cash Collateral**

24. Shortly after the Petition Date, I authorized the filing of *Debtor's First Day Motion for Entry of Interim and Final Order Authorizing Debtor to Use Cash Collateral and Providing Adequate Protection and For Other Relief.*

25. I assisted with the preparation of the Budget attached to the Cash Collateral Motion, which outlines anticipated revenues and expenditures of the Debtor over the next thirty (30) days. The Budget demonstrates that the Debtor will be cash flow positive during the first thirty (30) days of the chapter 11 proceeding.

26. It is necessary for the Debtor to use cash collateral and make expenditures set forth in the Budget in order to meet necessary and critical operating expenses, including payroll.

27. If the Cash Collateral Motion is not granted, and the Debtor is not authorized to make expenditures set forth in the Budget attached to the Cash Collateral Motion, Debtor's business would suffer irreparable harm and would likely have to close.

**First Day Motion - Prepetition Wages and Compensation**

28. On or shortly after the bankruptcy filing date, I authorized the filing of Debtor's *First Day Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits* ("Prepetition Wages Motion").

29. The Debtor currently employs 21 individuals -- 17 full-time employees and 4 part-time employees in the ordinary course of business and incurs obligations to them for compensation for their services.

30. Debtor's next payroll is due on October 22, 2026 and covers the pay period ending on October 18, 2026, a pay period that straddles the Petition Date.

31. The total payroll and payroll related obligations total approximately $31,000.00. Of this amount, approximately $24,800.00 constitutes wages and payroll obligations arising prior to the Petition Date ("Prepetition Employee Obligations").

32. Payment of wages and compensation to employees, including the Prepetition Employee Obligations is necessary and critical for Debtor to sustain its operations as a going concern and ensure there are no interruptions.

Pursuant to 28 U.S.C. 1746, I declare to the best of my knowledge, under penalty of perjury, that the foregoing statements are true and correct.

By: /s/ *Daniel Connell*
Daniel Connell

Dated: October 15, 2026